AMENDMENT

| | |
|---|---|
| NORTHERN DISTRICT COURT OF GEORGIA<br>court Address: Richard B. Russell Federal Bldg, 75 Spring Street, SW, Atlanta, Georgia 30303 | FILED IN CLERK'S OFFICE<br>U.S.D.C. Atlanta<br>MAY 14 2010<br>JAMES N. HATTEN, Clerk<br>By: Deputy Clerk |
| PLAINTIFFS/PETITIONERS:<br><br>ETHEL JERALDINE MATTHEWS: WASHINGTON and MARY LORETTA ADAMS-JENKINS<br><br>DEFENDANTS:<br><br>WELLS FARGO BANK NA<br>and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC<br>and PROVIDENT FUNDING ASSOCIATES LP<br>and MCCALLA RAYMER, LLC<br>and FREDDIE MAC<br><br>and TIMOTHY GEITHNER<br>SECRETARY OF THE TREASURY, UNITED STATES<br><br>And ERIC HOLDER, U.S. ATTORNEY GENERAL, as ALIEN PROPERTY CUSTODIAN<br><br>And all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff's title, or any cloud upon plaintiff's title thereto.<br><br>Real Party In Interest, Intervenor:<br>**Ethel-Jeraldine-Matthews: Washington**<br>Private Bond # **RA356625748US** | ▲ COURT USE ONLY ▲ |
| | **TRIAL BY JURY DEMANDED**<br><br>**Case No.:** 1:10CV-1262<br><br>**Division:** JEC<br><br><br><br>Stamp |
| Attorney or Party Without an Attorney<br>Name: Ethel-Jeraldine-Matthews: Washington<br>Address: 65 Whipporwill Drive, Oxford, GA 30054<br>Phone Number: (770)788-8759<br>Email: ethelmatthews2005@yahoo.com | |

PETITION TO SET ASIDE and/or VOID FORECLOSURE SALE,
CANCEL NOTE AND SECURITY DEED AGAINST ALL KNOWN DEFENDANTS
AND FOR DECLARATORY AND INJUNCTIVE RELIEF
AND NOTICE OF INVOCATION OF RESERVED RIGHTS

COMES NOW Ethel-Jeraldine-Matthews: Washington, a non-attorney, real woman and Real Party in Interest, a non-corporate entity, as agent for ETHEL JERALDINE MATTHEWS: WASHINGTON and Mary Loretta Adams-Jenkins, a non-corporate entity, as agent for MARY LORETTA ADAMS-JENKINS entities defined as a United States Vessels (hereinafter

Plaintiffs/Petitioners), appearing specially, not generally, by special rules, "Restricted Appearance," in the original, in the alternative, as a matter of right and privilege, to allege rights under the Georgia Constitution, by verified oath and solemn affirmation of complaint, pursuant to special rules, exercising Petitioners' procedural due process. Defendants have been making false claims, contrary to the record, contrary to the statues regarding real estate and foreclosures and have denied Petitioners' due process. Petitioner MARY LORETTA ADAMS-JENKINS AND TITLE HELD IN Ethel-Jeraldine-Matthews:Washington "homeowner" **HEREBY INVOKES HER RIGHT TO REDEEM LEGAL TITLE TO HER PROPERTY BECAUSE SHE HAS EXERCISED HER STATUTORY RIGHT TO RESCIND WELL FARGO OF INVOCATION OF RESERVED RIGHTS;** and notice is now given for the protection of Petitioner's person, property, estate, and trust, hereby enters her complaints of injured party, involuntary servitude and peonage, due to wanton and malicious acts and threats, duress, coercion and fraud, by and through promulgating counterfeit securities, in violation of the laws of the forum in Georgia Republic, united States of America and the Law of Nations.

The Plaintiff wishes to point out to the court that she is **NOT** an individual schooled in the law, but as an individual exercising her rights under law for the proper action of the court from misrepresentative actions on the part of the Defendants. As such, the Plaintiff asks the court to take **judicial notice** (**Rule 201** of the **Federal Rules of Evidence** and **Georgia Rules of Evidence**) of the **enunciation of principles** stated in **King v. Knoll (No. 04-04149-JAR)**, **Whitney v. State of New Mexico (113 F.3d 1170)**, and **Haines v. Kerner (404 U.S. 519)**, wherein the courts are directed that those who are unschooled in law making complaints/pleadings shall have the court look to the **substance** of the complaint/pleadings **rather than** the form and hereby makes the following pleadings/notices in the above referenced matter **WITHOUT** waiver of any rights, claims or defenses.

The **Petitioner as Affiant herein**, without waiving **ANY** rights and while reserving **ALL** rights and legal issues does solemnly affirm that she is of lawful age, being of **sound mind** and **competent to make this affidavit** and willing to testify in open court, that the statements herein are from her own **personal**, **firsthand knowledge** of the information and facts contained herein, and are true and correct in substance and in fact, and that those matters cited herein are believed to be true as reported; and as further grounds for the relief sought, states and avers as follows:

## JURISDICTION

1. This court has jurisdiction pursuant to 28 USC. 1332 as a civil action where the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different States. The parties in this action are diverse, bridging several state jurisdictions. WELLS FARGO HOME MORTGAGE is chartered in Delaware State, and its registered agent in Georgia is Corporation Service Company. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. is registered in the State of Delaware and is not registered in Georgia. . PROVIDENT FUNDING ASSOCIATES LLP is chartered in the State of California, and is registered in Georgia. MCCALLA RAYMER LLC is registered in the State of Georgia. FREDDIE MAC is not registered in the State of Georgia. This court has jurisdiction over

this proceeding pursuant to federal statute and this matter arises out of ownership and possession of real estate property located in the Northern District of Georgia. All other parties are either domiciled or are doing business in the Northern District of Georgia.

2. The United States District court is the mandated district court of the United States having de jure venue to hear a cause of action, etc., pursuant to 5 Stat. 516, chapter 188, par 5, enacted August 23, 1842 pursuant to the Act of September 24, 1789, chapter 20, and the Constitution for the United States of America, Article III par 2, and, in that the Respondents/Libellees et. al., are directed by the Governor of the Fund (IMF), aka Secretary of the Treasury, alien custodian for Prize and Booty, and are foreign agents of their principal, the Fund and Bank, et. al., a fortiori mandates, pursuant to the law of the United States of America Title 22 USC Foreign Relations and Intercourse – International Organizations, chapter 7 sec 286(g). Jurisdiction and venue of actions: "...any such action at law ... to which either the Fund or Bank shall be a party shall be deemed to arise under the laws of the United States, and the District courts of the United States shall have original jurisdiction of any such action."

3. This court has jurisdiction over this action pursuant to FRCP Rule 9(h). Pleading Special Matters: (h) Admiralty and Maritime Claims. A pleading or count setting forth a claim for relief within the admiralty and maritime jurisdiction that is also within the jurisdiction of the district court on some other ground may contain a statement identifying the claim as an admiralty or maritime claim for the purposes of FRCP 14(c), 38(e), 82, and the Supplemental Rules for Certain Admiralty and Maritime Claims. If the claim is cognizable only in admiralty, it is an admiralty or maritime claim for those purposes whether so identified or not. The amendment of a pleading to add or withdraw an identifying statement is governed by the principles of Rule 15. A case that includes an admiralty or maritime claim within this subdivision is an admiralty case within 28 U.S.C. § 1292 (a)(3).

4. This court has jurisdiction over this action pursuant to 1950-Act Dec. 13, 1950, extended time limit within which certain suits in admiralty may be brought against United States. 1932--Act June 30, 1932, amended section generally. Prior to amendment, section read as follows: "That suits as herein authorized may be brought only on causes of action arising since April 6, 1917, provided that suits based on causes of action arising prior to the taking effect of this Act shall be brought within one year after this Act goes into effect; and all other suits hereunder shall be brought within two years after the cause of action arises."

5. This court has jurisdiction over this action pursuant to Negotiable instrument law.

6. Notice Invocation of Reserved Rights, 46 U.S.C., Appendix 787.

7. Notice Invocation of Reserved Rights, Title 50 U.S.C. Appendix Jurisdiction 6, 7, 9, 32, Invocation of Amendments.

8. Invocation of UCC 1-308 all rights reserved.

9. Bill of Rights 1 through 10, respectively.

## STANDING

10. Petitioners hereby incorporate the allegations contained in paragraphs 1 through 9 as though fully set forth herein.

11. The second Petitioner as a secured party on a properly executed Warranty deed, is the one true owner fully vested with all rights in and to the property as defined herein below and therefore has standing to bring this complaint.

## VENUE

12. Petitioners hereby incorporate the allegations contained in paragraphs 1 through 11 as though fully set forth herein.

13. Venue of this matter is proper in that the all parties reside in the District of Northern Georgia, or do business in the District of Northern Georgia, or have done business and committed the crimes as herein alleged within the District of Northern Georgia, and the Property is situated within the District of Northern Georgia therefore the Northern District court of Georgia is the only court within the District that has jurisdiction the to hear this matter.

## PARTIES

14. Petitioners hereby incorporate the allegations contained in paragraphs 1 through 13 as though fully set forth herein.

    a. The first Plaintiff in this action is named Ethel-Jeraldine-Matthews: Washington, who is domiciled in Georgia State. Ethel-Jeraldine-Matthews: Washington maintains a mailing address at 65 Whipporwill Drive, Oxford, GA 30054 Ethel-Jeraldine-Matthews: Washington is the successor in interest to the property located at 65 Whipporwill Drive, Oxford, GA 30054 by way of assignment of one Warranty Deed issued from MARY LORETTA ADAMS-JENKINS. (hereinafter "Plaintiff 1")

    b. The second Plaintiff in this action is named MARY LORETTA ADAMS JENKINS, who is domiciled in California State. Mary Loretta Adams Jenkins maintains a mailing address at 9400 S. Hobart Blvd., Los Angeles, CA 90047 (hereinafter "Plaintiff 2")

15. The first Defendant in this case is WELLS FARGO BANK, NA believed to be organized under the laws of the State of Delaware, whose registered agent is Corporation Service Company, 40 Technology Pkwy, Suite 300, Norcross, GA 30092. (hereinafter, "WELLS FARGO").

16. The next Defendant in this case is MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. believed to be organized under the laws of the State of Delaware, whose

registered agent having a mailing address 3300 SW 34th Ave., Suite 101, Ocala, FL 34474 (hereinafter, "MERS").

17. The next Defendant in this case is PROVIDENT FUNDING ASSOCIATES; L.P. believed to be organized under the laws of the State of California, whose registered agent is Corporation Services, Inc. having a mailing address at 4 Technology Pkwy South, Norcross, GA 30092 (hereinafter "Provident")

18. The next Defendant in this case is MCCALLA RAYMER, LLC believed to be organized in Georgia whose registered Agent is Marty Stone, 6 Concourse Parkway, Suite 3200, Atlanta, GA 30328 and mailing address is 1544 Old Alabama Road, Roswell, GA 30076.(hereinafter "MCCALLA")

19. The next Defendant in this case is FREDDIE MAC, believed to be organized in Georgia but is not registered in Georgia having a mailing address of 2300 Windy Ridge Parkway, Southeast, Atlanta, GA 30339. (hereinafter "FREDDIE")

20. TIMOTHY GEITHNER, SECRETARY OF THE TREASURY, UNITED STATES as Third Party Defendant is an indispensable party under statute whose mailing address is Department of the Treasury, 1500 Pennsylvania Avenue, NW, Washington, DC 20220.

21. ERIC HOLDER, U.S. ATTORNEY GENERAL, as ALIEN PROPERTY CUSTODIAN and Third Party Defendant is an indispensable party under statute whose mailing address is U.S. Department Of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530.

## FACTS OF THE CASE

22. Petitioners hereby incorporate the allegations of the previous paragraph #1through 16 as though fully set forth herein.

23. **Property in Question**: The Property referred to herein is situated in the State of Georgia, County of Newton, City of Oxford described as follows: ALL THAT TRACT OF PARCEL OF LAND LYING AND BEING IN LAND LOT 411 OF THE 16TH DISTRICT, NEWTON COUNTY, GEORGIA, AND BEING LOT 1 OF HIGHLANDS MEADOW SUBDIVISION, AS PER PLAT RECORDED IN PLATE BOOK 30, PAGES 292-297 (AND MORE PARTICULARLY SHOWN ON PAGE 293), NEWTON COUNTY, GEORGIA RECORDS; WHICH PLAT IS INCORPORATED HEREIN AND MADE A PART HERE OF REFERENCE. DESCRIBED AS FOLLOWS: 65 WHIPPORWILL DRIVE, OXFORD, GA 30054. (hereinafter "The Property")

24. Wells Fargo loan number 0170120471.

25. On or about the 19th day of March, 2007, Mary Loretta Adams-Jenkins contracted with Provident Funding Associates, L.P. for a loan of money in the amount of Three Hundred Ninety Thousand Dollars and no/100ths ($390,000.00) US Dollars.

26. The Promissory Note does not specify whether it was to be paid with money denominated in Federal Reserve Notes or other Negotiable Instruments.

27. Plaintiff 2 made regular monthly payments, in the form of Federal Reserve Notes or Credit on Account, from June 2007 through June 2008.

28. Notice of Assignment, Sale, or Transfer Of Servicing Rights from "MERS" to "PROVIDENT FUNDING ASSOCIATION FARGO, P.O. Box 10335, Des Moines, IA 50306 dated June 6, 2009.

29. On or about March 7, 2009 the loan transferred from MERS TO WELLS FARGO loan number 51019809-FT7 dated June 2, 2009.

30. On or about December 24, 2009 Notice of Bill of Sale, Warranty Deed, Affadavit of Individual Surety, Release of Lien on Real Property and Release of Personal Property From Escrow was recorded in Office of Superior Court in Newton County.

31. On or about April 14, 2010 Plaintiff 1 received a Notice of Sale Under Power on loan number 51019809-FT7.

32. On or about April 27, 2010 Plaintiff 1 and 2 filed a Quiet Title Civil Action in Northern District Court of Georgia.

33. On or about April 28, 2010, Notary Witness, Clarence Branch mailed Summons in Civil Action to Registered Agents of WELLS FARGO, MERS, PROVIDENT and MCCALLA RAYMER, LLC and proof of service form with copies of certified and registered mailing receipts was sent to Clerk of Court of the Northern District.

34. On or about May 4, 2010, the property was foreclosed on.

35. On or about May 7, 2010 Plaintiff 1 received a posting from Tricia Donn, a real estate agent, saying that she had been notified by FREDDIE to contact the Mary Loretta Adams-Jenkins about negotiating with FREDDIE.

36. On or about May 12, 2010, Donna Robinson, from About Sales, Inc. contacted Plaintiff 1 and said she had come to set up an appointment with Plaintiff 2 to see if she could qualify for a modification loan.

## SUMMARY OF THE CASE

37. Petitioners hereby incorporate the allegations contained in paragraphs 1 through 36 as though fully set forth herein.

38. The main part of the case involves the Plaintiff 1 who has owned the Property for approximately four (4) months and is the record owner of the property by deed. The property, by Plaintiff 2, was transferred under a "Warranty Deed upon Bill Of Sale", "Affidavit of Individual Surety", "Release of Lien on Real Property" and "Release of Personal Property From Escrow" dated December 24, 2009 and recorded in office of Clerk of Superior Court, Newton County in Book 2787, Page 599-604 on January 12, 2010.

39. Plaintiffs request that this court cancel the original Promissory Note for failure of consideration, fraudulent inducement, fraud in fact, and material misrepresentation.

40. Plaintiffs request that this court rescind the Security Deed which was executed in conjunction with the Promissory Note

41. Planitiff 2 requests that this court cancel the Trustee's Deed upon Sale for fraudulent transfer, as the trustee had no valid Security Deed upon which to execute.

42. Plaintiff 2 requests that this court award monetary damages for fraud in fact and usury in violation of federal and state law forbidding such practices.

43. Plaintiff 2 requests that this court award monetary amounts for the damages, plus punitive amounts, incurred for breach of trust, misfeasance, malfeasance and nonfeasance for failure of the trustee, under the Security Deed agreement, to inform Petitioner as to the true nature of the contract and to inform Petitioner that no consideration was or would be provided for Petitioner upon transfer under the terms of the Security Deed.

44. Plaintiff 2 requests that this court award monetary amounts for damages, plus punitive amounts, for: (a) mail fraud, (b) wire fraud, and (c) securities fraud under the Civil Racketeering Influenced and Corrupt Organizations Act.

45. Plaintiffs request that this court award monetary amounts for damages, plus punitive amounts for illegal Sale Of Power since a Civil Action had been filed prior to the Sale and Notice of Service was given to Defendants.

46. Plaintiff 2 requests that this court grant declaratory relief declaring that the original lender in this instance loaned credit in the form of negotiable instruments called Federal Reserve Notes and so can be paid back in like form with any form of negotiable instruments and not limited to Federal Reserve Notes.

47. If any Defendant can uphold any valid claim upon Plaintiff 2 or Petitioner's property that it be fully discharged and the property returned by making proper claim under Federal Statute 46 USC 748 wherein the Secretary of the Treasury for the United States is authorized to pay claims and judgments and for the return of property under Federal Statute 50 App USC 7, 9 & 32 wherein the Attorney General for the United States is authorized to return property. These are the statutory remedies, as the people's remedy, for claims and seizures under the fractional reserve fiat monetary system.

## BACKGROUND FACTS

48. Petitioners hereby incorporate the allegations contained in paragraphs 1 through 47 as though fully set forth herein.

49. It is Petitioners' contention that the United States is and has been in a bankruptcy since at least 1933 and evidence of such can be found in the Congressional Record and United States Code. As part of the "New Deal" the United Stated borrowed 33 million non-redeemable Federal Reserve Notes from the Federal Reserve and at that time a new form of currency entered into circulation in the system of commerce.

50. As a result today, as contained in numerous case decisions, a debt can no longer be paid but merely discharged as a matter of law. Meaning, Federal Reserve Notes have no intrinsic value, and as such, are negotiable instruments under the negotiable instruments law and when used to, in the common vernacular, "pay" a debt it is like paying a $2 debt owed with a $2 I.O.U. The net result is that one ends up with $4 dollars of debt and therefore, as you can see in this example, the debt is not paid but merely discharged as a matter of law. The original debt still exists but the nature of the debt changes and is no longer collectible.

51. As a matter of practice and usage the only functional currency in circulation and use today is non-redeemable Federal Reserve Notes. When Petitioner applied for the loan and was funded on the loan, she understood and believed she was being loaned "money", meaning money of exchange that was redeemable and had intrinsic value; when in reality she was purchasing credit from the Federal Reserve, through the lender, in the form of Negotiable Instruments, or specifically, Federal Reserve Notes.

52. As a result there were numerous material misrepresentations in the contract for the lending of credit, which constitute fraudulent inducement and which lead to fraud in fact in the operation of the contract. It was never disclosed to the Petitioner that the Mortgage Company, when it loaned "money" according to Federal Reserve Publication Circular 10 under the "Master Account Agreement" as executed with the Federal Reserve (the ultimate source of all credit issued today in the US system), and put up no more than 8% of the total funds that were proffered.

53. This raises several questions the Petitioner is asking the court to answer. Under such an arrangement where the purported lender, after receiving 2 months of payments, plus a legal and negotiable Promissory Note for $1,000,000.00 (One Million Dollars), has received back substantially more than what the purported lender originally contributed; so how are they an injured party? If they have received more back than they put in and are in fact not damaged, do they have standing to foreclose or come to this court or any other to get remedy? If they have been charging interest on the entire balance, on the life of the loan, and have only put in a small percentage (1/13th) of the overall loan, does that constitute usury in violation of Georgia law prohibiting usury? If the bulk of the proceeds have come from someone other than the purported lender, does the purported lender

have standing and/or authority to foreclose or seek remedy in this or any other California court; and if they are entitled to seek remedy, is it for the full amount of the mortgage or just a percentage equivalent to what percentage they have invested?

54. Ancillary points to this issue are: does the purported lender have the statutory authority under Georgia law to foreclose on this particular property? Does the purported lender have possession of the note with a duly executed assignment and evidence of the full amount of consideration provided to demonstrate they are in fact a legitimate Holder in Due Course?

55. The presumption is that every party that comes to this court, or any other Article I tribunal, is a "corporate entity" (creature of the state), engaged in commerce or commercial activity in this closed Federal Reserve System monopoly, unless the presumption is rebutted. This presumption is hereby rebutted and Rule of Necessity is invoked.

56. Ultimately there must be a remedy to the credit based, fractional reserve, fiat currency, monetary system. It would be a fraud upon the people if they were provided no remedy to pay a debt at law, but were merely allowed to discharge it (replace it with new debt). The creator's of this fractional reserves banking system understood the issues, and have provided remedy in the statutes. These remedies are provided under Federal Statute 46 USC 748 for payment of judgments and claims against United States Vessels, which includes the legal fiction MARY LORETTA ADAMS JENKINS by the United States Secretary of the Treasury and Federal Statute 50 app USC 7, 9 & 32, for the return of property seized, to be returned by the United States Attorney General as the Alien Property Custodian under the Trading with the Enemy Act under Title 50 app.

## CAUSE OF ACTION TO SET ASIDE FORECLOSURE SALE

57. Petitioner hereby incorporates the allegations contained in paragraphs 1 through 56 as though fully set forth herein.

58. MERS is not a lender so therefore do not have authority to do a transfer to Wells Fargo.

59. MERS nor Wells Fargo are registered to do business in the state of Georgia and therefore has no standing to foreclose on any property in the state of Georgia.

60. MERS nor Wells Fargo have statutory authority to foreclose on any property in the state of Georgia.

61. MERS nor Wells Fargo have authority in its corporate charter and by-laws by which to foreclose on any property in the state of Georgia.

62. MERS, Wells Fargo or Freddie own a Note upon which to base any claim on Plaintiff 1's property.

63. Provident, Mers, Wells Fargo, and Freddie used counterfeit securities to defraud this Petitioner.

64. The foreclosure is invalid since Plaintiffs 1 and 2 had filed a Civil Action in the Northern District Court of Georgia prior to the Sale of Power.

65. The Note and Security Deed in question are invalid because they lack essential components of any valid contract; namely (a) exchange of consideration, and (b) full disclosure.

66. MERS, Wells Fargo or Freddie did not ever have a valid contract with Petitioner and there is no security deed wherein Wells Fargo is a beneficiary and therefore should benefit from any foreclosure of this property.

67. Wells Fargo and Freddi are not, and were not, the "Holders in Due Course" of any financial instrument that requires Petitioners to pay or perform, nor upon which Wells Fargo or Freddie could exercise any right. The Honorable Judge Christopher A. Boyko of United States District Court Northern District of Ohio Eastern Division, recently ruled in Case 1:07-cv-02282-CAB regarding 14 separate motions for foreclosure, "In each of the above-captioned Complaints, the named Plaintiff alleges it is the holder and owner of the Note and Mortgage. However, the attached Note and Mortgage identify the mortgagee and promisee as the original lending institution — one other than the named Plaintiff. Further, the Preliminary Judicial Report attached as an exhibit to the Complaint makes no reference to the named Plaintiff in the recorded chain of title/interest". "The court's Amended General Order No. 2006-16 requires Plaintiff to submit an affidavit along with the Complaint, which identifies Plaintiff either as the original mortgage holder, or as an assignee, trustee or successor-in-interest. Once again, the affidavits submitted in all these cases recite the averment that Plaintiff is the owner of the Note and Mortgage, without any mention of an assignment or trust or successor interest. Consequently, the very filings and submissions of the Plaintiff create a conflict. In every instance, then, Plaintiff has not satisfied its burden of demonstrating standing at the time of the filing of the Complaint."

68. Judge Kathleen M. O'Malley, United States District Court Northern District Of Ohio Eastern Division, In Re Foreclosure Actions, stated, "Fifth Amended General Order No. 2006-16 (October 10, 2007). A foreclosure plaintiff, therefore, especially one who is not identified on the note and/or mortgage at issue, must attach to its complaint documentation demonstrating that it is the owner and holder of the note and mortgage upon which suit was filed. In other words, a foreclosure plaintiff must provide documentation that it is the owner and holder of the note and mortgage as of the date the foreclosure action is filed."

69. Anything short of the full disclosure of all known pertinent facts is a fraud upon the court and renders void any decree thereafter entered. *Coppinger v. Coppinger*, 130 Colo. 175, 274 P.2d 328 (1954); *Weber v. Williams*, 137 Colo. 269, 324 P.2d 365 (1958)

70. To simply go through the form of legalism without a fair disclosure of existing known facts is of no avail. *Coppinger v. Coppinger*, 130 Colo. 175, 274 P.2d 328 (1954); *Weber v. Williams*, 137 Colo. 269, 324 P.2d 365 (1958).

**CAUSES OF ACTION AND CLAIM FOR FAILURE OF CONSIDERATION**
**As against Defendants Provident, MERS, Wells Fargo, and Freddie**

71. Petitioner hereby incorporates the allegations contained in paragraphs 1 through 70 as though fully set forth herein.

72. The alleged Lender Provident, and its alleged successors in interest MERS and Wells Fargo did fail to lend any valuable consideration. Provident and its alleged successors in interest MERS and Wells Fargo provided no more than a promise to pay the substance of value, which is known as Legal Tender, by issuing a promise to pay said Legal tender through the issuance of Negotiable Instruments. Any Legal Tender that Provident and its alleged successors in interest MERS, Wells Fargo and Freddie did actually part with, as a result of the Negotiable Instruments later being presented to them, was a secondary and unrelated transaction.

73. Provident and its alleged successors in interest MERS, Wells Fargo, and Freddie did not pay the value, as agreed to in the Note, to the parties to whom they agreed to lend the money. What Provident and its alleged successors in interest MERS and Wells Fargo provided to the alleged borrower was a promise to pay value in the form of Negotiable Instruments. These Negotiable Instruments in and of themselves contained no value but were merely promised to pay all value at a later date. As no value was parted with at the formation and completion of the loan agreement and alleged contract. Any alleged contract evidenced by the Promissory Note and Security Deed is inherently invalid.

**CAUSES OF ACTION AND CLAIM FOR USURY**
**As against Defendants Provident, MERS, Wells Fargo, and Freddie**

74. Petitioners hereby incorporate the allegations contained in paragraphs 1 through 73 as though fully set forth herein.

75. **Usury**. If the Promissory Note which the present Security Deed is designed to secure can be held to lawfully require a repayment in Legal Tender, then any good faith estimate accounting for that actual amount of Legal Tender Federal Reserve Notes that were actually parted with, will reveal that Provident and the alleged successors in interest MERS, Wells Fargo, and Freddie actually gained a Usurious amount of interest in violation of article 15 of the Georgia Constitution. Through the use of their fractional reserve banking system, Provident and the alleged successors in interest MERS and Wells Fargo probably parted with a sum of Legal Tender Federal Reserve Notes amounting to less than 1/8th of the face value of the Negotiable Instruments that they issued to encumber the Property. This means that the actual interest rate upon the

accurate amount of Legal Tender Federal Reserve Notes as were allegedly loaned was a minimum of 8 times greater than the amount agreed to in the original Trust Deed Contract. This is a violation of Common Law and Statutory prohibitions against usury throughout the vast majority of the laws of this nation. As a result of this Usury, the obligation's true, smaller but hidden principal has been paid off, and all economic interest on the true principal that Provident and the alleged successors in interest MERS and Wells Fargo had in the Property has also been repaid. As a result, the interest that Provident and the alleged successor in interest Wells Fargo continue to claim through the Security Deed is no longer lawfully existent.

76. Attempted Collection of an Unlawful Debt in Violation of Principles of Law enshrined within 18 USC 1961, 1962, and 1964. Provident and the alleged successors in interest MERS, Wells Fargo and Freddie have received income from collection of the un-lawful debt encumbering this Plaintiff's property. Provident and the alleged successors in interest MERS, Wells Fargo and Freddie have participated in and/or used the proceeds of such income in the operation of an enterprise which engages in activities which affect interstate and foreign commerce in violation of the principles of Common-Law enshrined within 18 U.S.C. 1961, 1962, and 1964.

## CAUSES OF ACTION AND CLAIM FOR BREACH
## As against Defendants Provident, Mers, Wells Fargo, and Freddie

77. Petitioners hereby incorporate the allegations of the previous paragraph #1through 76 as though fully set forth herein.

78. **BREACH OF CONTRACT, FIRST COUNT:** Provident and the alleged successors in interest MERS and Wells Fargo contracted with this Plaintiff to loan Plaintiff Legal Tender "Dollars" of U.S. currency. The contracting parties contracted that the loan would be repaid in Legal Tender "Dollars". The contracting parties did not enter into a contract to loan or borrow and repay in Negotiable Instruments. Provident and the alleged successors in interest MERS and Wells Fargo failed to lend this Plaintiff Legal Tender "Dollars" as lawfully defined by the US Congress in the form of US Silver Coin.

79. The U.S. Congress, in deciding what was to be Legal Tender for this country, by act on April 2nd, of 1792, defined the term "Dollar" to mean specifically a coin issued by the U.S. Government containing 371 4/16 grains of pure silver. There is no lawful authority for referring to any form of paper currency as Legal Tender "Dollars". As Provident and the alleged successors in interest MERS and Wells Fargo have failed to lend Legal Tender within the Lawful definition of the term, the contractual agreement between these parties was breached by Provident and the alleged successors in interest MERS and Wells Fargo. Therefore the Promissory Note and the Security Deed upon which it is founded are lawfully invalid.

80. **BREACH OF CONTRACT, SECOND COUNT**. By common acceptance, and the Federal Reserve Corporation's own decree, Federal Reserve Notes and other US Currency have

come to be known as Legal Tender "Dollars". Provident and the alleged successors in interest MERS and Wells Fargo entered into a contract to lend Legal Tender "Dollars" to this Plaintiff. The contracting parties entered into a contract to loan or borrow and repay Legal Tender "Dollars". The contracting parties did not enter into a contract to loan or borrow and repay Negotiable Instruments.

81. Provident and the alleged successors in interest MERS, Wells Fargo, and Freddie did not loan any Legal Tender "Dollars" to this Plaintiff, as the term "Dollars" has commonly come to be known and used. As a result, Provident and the alleged successors in interest MERS, Wells Fargo and Freddie have not loaned the "Dollars" intended and specified in the contract as defined by common definition. As a result, the terms of the contractual agreement between these parties was breached by Provident and the alleged successors in interest MERS, Wells Fargo and Freddie.

**CAUSES OF ACTION AND CLAIM FOR ULTRA VIRES**
**As against Defendants Provident and its alleged successors in interest**
**MERS, Wells Fargo, and Freddie**

82. Petitioners hereby incorporate the allegations contained in paragraphs 1 through 81 as though fully set forth herein.

83. **ULTRA VIRES:** Provident and its alleged successors in interest MERS, Wells Fargo and Freddie exceeded the express provisions of their respective corporate charters by engaging in the activity of loaning a substance other than Legal Tender "Dollars" of the United States. The Negotiable Instruments which it issued in granting the loan here in question are not Legal Tender "Dollars" of the United States. Provident and its alleged successors in interest MERS, Wells Fargo and Freddie are authorized by their respective charters to loan Legal Tender "Dollars" of the United States only. There is no authority in existence which authorizes Provident and its alleged successors in interest MERS, Wells Fargo, Freddie to loan the Negotiable Instruments as it did in this case.

**CAUSES OF ACTION AND CLAIM FOR INDEFINITENESS OF CONTRACT**
**As against Defendants Provident and the alleged successors in interest**
**MERS, Wells Fargo and Freddie**

84. Petitioner hereby incorporates the allegations of the previous paragraph #1through 83 as though fully set forth herein.

85. **INDEFINITENESS:** As a result of the failure of Provident and the alleged successors in interest MERS, Wells Fargo, and Freddie to specify the essential term of whether they would loan in Legal Tender "Dollars" or Negotiable Instruments and whether they would demand payment in Legal Tender "Dollars" or Negotiable Instruments, Provident and the alleged successors in interest MERS, Wells Fargo, Freddie created a contract which was indefinite to the point that a court of Law will not be able to determine which type of funds

was either agreed to be loaned or to be repaid. As a result the contract is indefinite within the term as defined by law.

**CAUSES OF ACTION AND CLAIM FOR UNCONSCIONABILITY**
**As against Defendants Provident and the alleged successors in interest**
**MERS and Wells Fargo**

86. Petitioner hereby incorporates the allegations contained in paragraphs 1 through 85 as though fully set forth herein.

87. **UNCONSCIONABILITY:** As a result of the Fractional Reserve banking practices and the loan of Negotiable Instruments by Provident and the alleged successors in interest MERS Wells Fargo and Freddie, and their officers, the actual amount of Federal Reserve Notes commonly considered "Legal Tender" that were parted with was only 1/8th or 12% of the amount agreed to in the original Loan Agreement and Security Deed Contract. This is a violation of State and Federal as well as U.C.C. section 2-302, and other provisions against unconscionable actions.

88. Further, the parties to the contract occupied substantially unequal bargaining positions in that Provident and the alleged successors in interest MERS, Wells Fargo and Freddie had access to the ability to circulate Negotiable Instruments as money within the community and state. By this activity Provident and its alleged successors in interest MERS, Wells Fargo and Freddie have the ability to circulate, as money, the Negotiable Instruments which they issue. This gives Provident and its alleged successors in interest MERS, Wells Fargo and Freddie the ability to circulate between 8 and 33 times the amount of money in comparison to the amount that this Plaintiff is capable of circulating. As the Negotiable Instruments of this Plaintiff are not accepted for circulation as money, she is in a substantially unequal bargaining position, and she was thus unfairly influenced to enter into the contract.

**CAUSES OF ACTION AND CLAIM FOR FRAUD**
**As against Defendants Alliance and its alleged successors in interest**
**MERS, Wells Fargo and Freddie**

89. Petitioner hereby incorporates the allegations of the previous paragraph #1through 88 as though fully set forth herein.

90. **FRAUD:** The failure of Provident and the alleged successors in interest MERS, Wells Fargo, and Freddie to specify the essential terms of whether they would loan in Legal Tender "Dollars" or Negotiable Instruments or demand payment in Legal Tender "Dollars" or Negotiable Instruments allowed Provident and the alleged successors in interest MERS, Wells Fargo and Freddie to take fraudulent advantage of this Plaintiffs.

91. The Georgia Financial Code specifically prohibits banking institutions such as Provident and the alleged successors in interest MERS and Wells Fargo from circulating their

commercial paper in purposeful efforts to create debts such as the one encumbering this Plaintiff's property. As such, the note and security deed encumbering this Plaintiffs property are invalid.

92. **FRAUD:** Petitioner states that Defendant Provident and the alleged successors in interest MERS, Wells Fargo and Freddie actions of fraud and deceit have foundation in *Taylor v. State Compensation Insurance Fund*, 175 Mont. 432, 913 P.2d 1242 (1996) where in order to sustain a claim of fraud, claimant was required to plead and prove each of the nine elements of fraud: (1) a representation; (2) falsity of the representation; (3) materiality of the representation; (4) speaker's knowledge of the falsity of the representation; (5) the speaker's intent it should be relied upon; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation; (8) the hearer's right to rely on the representation; and (9) the hearer's consequent and proximate injury caused by reliance on the representation.

93. Petitioner contends that all of the above elements exist and believes and having knowledge and thereon alleges that on the date of the execution of the Promissory Note, and accompanying Security Deed document. The relevant information contained therein was false and materially deceptive, and unfair business trade practices were used to conceal the true nature of the transaction

(1) A representation:

Provident and the alleged successors in interest MERS, Wells Fargo and Freddie represented that they were going to fund the loan.

(2) Falsity of the representation:

Provident and the alleged successors in interest MERS, Wells Fargo and Freddie did not in fact loan money to Petitioner.

(3) Materiality of the representation:

Provident and the alleged successors in interest MERS, Wells Fargo and Freddie misrepresentations were material because the facts are that under the current monetary system of the USA, the lender loans no money to the borrower as alleged in the loan application or loan documents.

(4) Speaker's knowledge of the falsity of the representation:

The lender falsely stated the lender was loaning money prior to closing and the title / escrow person who received the check(s) are able to see that the "lender" does not

transfer funds into the escrow account and that the source of the .funds is from elsewhere but falsely represented that funds did come from the "lender".

(5) The speaker's intent it should be relied upon:

Provident and the alleged successors in interest MERS, Wells Fargo and Freddie words were relied upon by Petitioner in good faith. Consequently Petitioner was then defrauded during the process of funding and closing the loan.

(6) The hearer's ignorance of the falsity of the representation;

Petitioner was not privy to the source of funds and was not in an equal or similarly situated business posture as Provident and the alleged successors in interest MERS and Wells Fargo at the time of the Contract formation period, and was taken advantage by the unfair business practices brought on by Provident and the alleged successors in interest MERS and Wells Fargo.

(7) The hearer's reliance on the representation;

Provident and the alleged successors in interest MERS and Wells Fargo words and writings were relied upon to the detriment of Petitioner, as Petitioner was fraudulently induced to pay money of exchange (currency exchanged for a substantial portion of Petitioner's commercial energy) for money of account (Credit on Account created by Defendant, out of nothing).

(8) The hearer's right to rely on the representation;

Petitioner relied upon Provident and the alleged successors in interest MERS and Wells Fargo's offer and was given a good faith estimate, assurances, written agreement, and words that Petitioner had a right to rely on, and because Petitioner did rely upon the acts, deeds and inducement by Provident and the alleged successors in interest MERS, Wells Fargo, Freddie who had superior knowledge, and because it is an industry standard operation, Petitioner relied upon these representations as were made about the so called "loan".

(9) The hearer's consequent and proximate injury caused by reliance on the representation. Petitioner's reliance upon fraud in statements and writings provided to him by parties in superior position precluded Petitioner from appreciating the essential elements of the undertaking. Petitioner's reliance gave forth to consequent and proximate injuries for:

a) Loss by conversion under contract

b) Financial instability of the home unit due to usury.

c) Interfering with financial stability.

d) Loss of use and enjoyment of funds which were paid in unfair advantage to Provident and the alleged successors in interest MERS, Wells Fargo and Freddie.

**CAUSES OF ACTION AND CLAIM FOR**
**BREACH AND CONVERSION UNDER CONTRACT**
**As Against Trustee Defendant**

94. Petitioner hereby incorporates the allegations contained in paragraphs 1 through 93 as though fully set forth herein.

95. Trustee owed a duty of care to Petitioner under the Security Deed agreement dated March 19, 2007. As a direct and proximate result of the Trustee's failure to disclose the true nature of the trust relationship, and failing to inform Petitioner that upon executing the said Security Deed agreement, Petitioner made a gift of her property to the trust. Due to this negligence Petitioner has sustained consequent and proximate injuries for:

a) Breach of Fiduciary Duty
b) Conversion of Property
c) Personal Injury
d) Unjust Enrichment
e) Financial Loss According to Proof
f) Interference with a Business Relationship
g) Deprivation of the Right to Use and Enjoy

**CAUSE OF ACTION FOR CANCELLATION**
**Return Promissory Note for Cancellation**

96. Petitioner hereby incorporates the allegations contained in paragraphs 1 through 95 as though fully set forth herein.

97. Petitioner requests that the original Note be brought to court for inspection and review for the purpose of authentication under rules of evidence, and for canceling due to Fraud in Fact.

**CAUSE OF ACTION FOR CANCELLATION**
**Return Security Deed for Cancellation**

98. Petitioner hereby incorporates the allegations contained in paragraphs 1 through 97 as though fully set forth herein.

99. Petitioner requests that the original Security Deed to be brought to court for inspection and review to authenticate under rules of evidence for canceling.

> Cancellation of an instrument may be had in an action for restitution [*see, e.g., Millar v. James (1967) 254 Cal. App. 2d 530, 532, 534, 62 Cal. Rptr. 335* (affirming judgment for restitution of real property conveyed in consequence of fraudulent inducement, and for cancellation of Petitioner's deed to defendant)]. A Petitioner seeking restitution on the basis of his unilateral rescission of a contract is entitled to complete relief [*see* Civ. Code § 1692[Dearing's]].

100. Specific reasons for requesting cancellation of the Security Deed is that upon the Note being cancelled, the Security Deed is no longer a valid document due to the merger rule upon which the Trust is terminated by operation of law and for Fraud in Fact.

**CAUSE OF ACTION FOLLOWING TRUST PROPERTY INTO ITS PRODUCT AGAINST TRUSTEE**

101. Petitioner hereby incorporates the allegations contained in paragraphs 1 through 100 as though fully set forth herein.

102. Where the trustee, by the wrongful disposition of trust property, acquires other Property, the beneficiary is entitled, at his option, to either enforce a constructive trust of the property so acquired, or to enforce an equitable lien upon it to secure his claim against the trustee for damages for breach of trust, misfeasance, malfeasance and or nonfeasance, as long as the product of the trust Property is held by the trustee and can be traced.

103. Except as stated above, the claim of the Petitioner against the trustee(s), any and all applicable, and for breach of trust, is that of a general claim with more specific claims possible once discovery is completed and a right to amend is reserved.

**CAUSE OF ACTION CIVIL RICO**
**AGAINST TRUSTEE AND MORTGAGE DEFENDANTS**

104. Petitioner hereby incorporates the allegations contained in paragraphs 1 through 103 as though fully set forth herein.

105. **ILLEGALITY BY MONOPOLY, CONSPIRACY, & RACKETEERING**. Provident, MERS, Wells Fargo, and Freddie and their officers, and other banking, financial, political, and/or real estate institutions (unknown at this time) have all knowingly, or unknowingly,

conspired against the working class population of the good County of Newton and State of Georgia to submerge the common people in a mountain of perpetual and unpayable debt. The Federal Reserve Banking Corporation of which Provident, MERS and Wells Fargo are franchise agents, has demonstrated an historical and documentable track record of purposefully expanding and contracting the money supply at timed intervals so as to purposefully dispossess economically vulnerable Georgians and Americans from their property. This Plaintiff and all of the good people of Newton County, the State of Georgia, and the United States are the pointed targets of a conspiracy by Provident and its alleged successors in interest MERS, Wells Fargo, Freddie and other banking corporations, to reduce the people of America to a class of obedient and broken slaves in a society with substantially less constitutional rights and in a mirror image likeness to that of Nazi Germany or the former Soviet Union.

106. Provident and its alleged successors in interest MERS, Wells Fargo, Freddie and its officers are active causes of and participants in the present increase in the foreclosure rate in this state. This Plaintiff does not know whether the individual officers are knowledgeable or not of their criminality, but they have caused detriment and damage to this Plaintiff, and every homeowner in this state by the manner in which they entered into this, and the majority of their other lending contracts.

107. Petitioner claims that Provident and its alleged successors in interest MERS and Wells Fargo, Freddie and Trustee operate in a pattern, practice and course of conduct which constitute a criminal enterprise in violation of Federal and State Racketeering Statutes. Said Defendants regularly engage in cooperative efforts to deprive the public of property and cash under an elaborate scheme or artifice where the unaware public unknowingly enters into contracts under fraudulent terms wherein they are systematically loaned credit when they were led to believe that they were being loaned real money, and are thereby placed into peonage and usury due to a lack of consideration by the mortgage company

108. Petitioner claims that Provident and its alleged successors in interest MERS, Wells Fargo, Freddie and Trustee operate in a pattern, practice and course of conduct which constitute a criminal enterprise in violation of Federal and State Racketeering Statutes. Said Defendants regularly engage in cooperative efforts to deprive the public of property and cash under an elaborate scheme or artifice where: in order for the public to close on a loan, they are deceived, by a person who is in a superior position, into gifting their property away under the conveyance and security instruments including a Security Deed, the nature of which was not fully disclosed, which in turn precluded this Petitioner from appreciating the essential elements of the undertaking.

109. In turn, Petitioner claims that Provident and its alleged successors in interest MERS, Wells Fargo, Freddie and Trustee operate in a pattern, practice and course of conduct which constitute a criminal enterprise in violation of Federal and State Racketeering Statutes. Said Defendants regularly engage in cooperative efforts to deprive the public of property and cash under an elaborate scheme or artifice wherein said Defendants

systematically engage in a foreclosure process and deprive the public of property, upon a fraudulent process founded upon fraudulent documents.

110. Petitioner claims that Provident and its alleged successors in interest MERS, Wells Fargo, Freddie and Trustee operate in a pattern, practice and course of conduct which constitute a criminal enterprise in violation of Federal and State Racketeering Statutes. Said Defendants regularly engage in cooperative efforts to deprive the public of property and cash under an elaborate scheme or artifice where this systematic usury and deprivation are the cause of consequent and proximate injuries under the Civil RICO Statutes.

## ALLEGATIONS OF CRIMINAL WRONGDOING

111. Petitioner 2 hereby incorporates the allegations contained in paragraphs 1 through 110 as though fully set forth herein.

112. Plaintiff 2 alleges that Provident knowingly participated in fraud and racketeering in a scheme to unlawfully take away Plaintiff's property.

113. Plaintiff 2 alleges that MERS knowingly participated in fraud, and racketeering in a scheme to unlawfully take away Plaintiff's property.

114. Plaintiff 2 alleges that WELLS FARGO knowingly participated in fraud, and racketeering in a scheme to unlawfully take away Plaintiff's property.

115. Plaintiff 2 alleges that MCCALLA & RAYMER knowingly participated in fraud and racketeering in a scheme to unlawfully take away Plaintiff's property.

116. Plaintiffs 1 and 2 alleges that Freddie knowingly participated in fraud and is part of an illegal sale of property by Wells Fargo.

117. Plaintiff 2 further alleges that Trustee violated the trust that Plaintiff should reasonably expect from that officer. Trustee knowingly withheld information from Plaintiff that was of a vital nature to Plaintiff's wellbeing by failing to disclose that, under the terms of the Security Deed as an alleged contract, Plaintiff was being required to gift his property to the Mortgage Company without any corresponding consideration in return. As such, Trustee knowingly participated in deceit, fraud, and racketeering in a scheme to unlawfully take away Plaintiff's property.

118. Defendants (except Federal Officials) knew or should have known and fraudulently made a false oath or account, a violation of State and Federal Law.

119. Defendants (except Federal Officials) knew or should have known and fraudulently presented or used a false claim, a violation of Federal and State law.

120. Defendants (except Federal Officials) knew or should have known and fraudulently caused a False Security Instrument or Counterfeit Security to be created.

121. Defendants (except Federal Officials) are engaging in a pattern and practice of conduct that constitutes a criminal enterprise in violation of State and Federal RICO statutes.

## CAUSE OF ACTION INVOLVING FEDERAL OFFICIALS

122. Petitioner hereby incorporates the allegations contained in paragraphs 1 through 123 as though fully set forth herein.

123. If any Defendant can uphold any valid claim upon Petitioner or Petitioner's property, it can be fully discharged and the property returned by making proper claim under Federal Statute 46 USC 748 wherein the Secretary of the Treasury for the United States is authorized to pay claims and judgments and for the return of property under Federal Statute 50 App USC 7, 9 & 32 wherein the Attorney General for the United States is authorized to return property. These are the statutory remedies, as the people's remedy, for claims and seizures under the fractional reserve fiat monetary system.

## RELIEF REQUESTED

124. Petitioners hereby incorporate the allegations contained in paragraphs 1 through 123 as though fully set forth herein.

125. WHEREFORE, Plaintiffs requests the following relief:

126. That this court require the Defendants to answer this complaint, admitting and denying with particularity each and every allegation herein or suffer the ramifications of a default for failure to answer and an injunction be ordered preventing any Defendant from moving against the property, contacting any tenants, transferring any property or in any way adversely effecting Plaintiff 1's interest in the property in any manner.

127. That this court rescinds Plaintiff 2's mortgage with Wells Fargo and its assigns, despite any potential judgment entered against them, because federal and state law provide that TILA right to rescind survives the foreclosure sale and the equity of redemption is extinguished and that she lawfully rescinded her mortgage under TILA and here statutory rescission should be recognized as a means of exercising her right of redemption..

128. That all issues be tried by a jury herein, actually be tried before and by a full jury as at Common-Law within the Nisi-Prius Civil Jurisdiction, with the verdict to be binding upon this court and all parties as Constitutionally required by "Due Course of Law".

129. That this court order the original Promissory Note to be returned to Petitioner in court for inspection and review of signatures and for verifying the representations made therein.

130. That this court order the original Promissory Note and accompanying Security Deed be cancelled under election of remedies for Fraud in Fact and a declaration and the determination that Petitioner ETHEL JERALDINE WASHINGTON MATTHEWS is the rightful holder of title to the property.

131. That this court order Provident and its alleged successor in interest Wells Fargo to pay damages in the amount of $1,000,000.00 USD for Fraudulent Inducement to the Contract(s).

132. That this court order Defendants' accounting representative to demonstrate the specific form of payment used at the so-called funding of the loan and also the specific form of payment used at the purported "foreclosure sale" to enable Wells Fargo and Freddie to obtain the so-called title to the property using the infamous "full credit bid scheme".

133. That this court declare Defendants known and unknown at this time including Provident, MERS, Wells Fargo, Freddie and McCalla Raymer to have no estate, right, title or interest in said property, and that ETHEL JERALDINE WASHINGTON MATTHEWS is entitled to quiet and undisturbed possession of the property as described ante.

134. That this court order, in the alternative, an award in favor of Plaintiff 2 under election of remedies for compensatory damages in the amount of $380,000.00, plus interest, plus three times punitive damages for recoupment of the payments previously tendered to Defendants Provident and its alleged successors in interest MERS, Wells Fargo, and Freddie under usury.

135. That this court award to Plaintiffs compensatory damages, to be determined and apportioned amongst the various Defendants, for time spent in legal research and composition of this action comparable to standard attorneys' allowances from each and every Defendant on all counts.

136. That this court award to Plaintiffs punitive damages against all Defendants as applicable, as well as compensatory and punitive damages under the Civil Racketeering Statutes in an amount to be determined at trial and sufficient to send a message that such practices are repugnant to the people of Newton County and Georgia.

137. That this court rule that the practice of Fractional Reserve banking is Un-Lawful when used to secure usurious interest rates demandable in legal tender.

138. That this court rule that it is a breach of contract to BAIT with an offer to contract for the loan of dollars and then SWITCH to loan Negotiable Instruments as a feigned fulfillment of that obligation.

139. That this court award to Plaintiffs punitive damages in an amount sufficient to send a message that the aforesaid bait-and-switch practice is repugnant to the people of Santa Newton County and the State of Georgia.

140. That this court issue Declaratory Judgment declaring it is a proper interpretation of the doctrine of Equal Protection of the Laws that all who loan negotiable instruments or other instruments of credit in this state be compelled to accept negotiable instruments issued by the People of this state in satisfaction of these debts so contracted.

141. That this court grant injunctive relief in favor of Plaintiffs from any parties moving against Plaintiffs and/or their real estate, including the Property, without first proving to this court that all the lawful requirements and statutory requirements for foreclosure and transfer of property have been met.

142. That this court make determination as of the date of filing of this petition.

143. That this court make a determination on this petition.

144. For all such other and further relief as this court deems just and proper.

ETHEL JERALDINE WASHINGTON MATTHEWS

By: Ethel-Jeraldine-Matthews:Washington, agent, Petitioner/Plaintiff: UCC 3-402(b)(1)

Ethel Jeraldine Matthews: Washington

Signature: Ethel-Jeraldine-Matthews: Washington
Petitioner/Plaintiff, lawful woman

MARY LORETTA ADAMS-JENKINS

Mary Loretta Adams-Jenkins

Signature: Mary Loretta Adams-Jenkins
**Petitioner/Plaintiff, lawful woman**

**JURAT**

State Of Georgia )
) ss
Gwinnett County )

Subscribed and sworn to (or affirmed) before me on this 14th day of May, 2008, by Ethel Jeraldine Matthews: Washington, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

my commission expires Notary Public, Gwinnett County, Georgia My Commission Expires May 21, 2013
SEAL

Notary Public Clarence Branch